**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SEAN BEST,                                    *

Plaintiff,                                    *

v.                                            *        Civil Action No. ELH-19-2344

BALTIMORE COUNTY, *et al.*,                   *

Defendants.                                   *
                                           ***

**<u>MEMORANDUM OPINION</u>**

The self-represented plaintiff, Sean Best, filed suit pursuant to 42 U.S.C. § 1983 while he was detained at the Baltimore County Detention Center ("BCDC"). He has sued a host of defendants: Baltimore County; BCDC Director Gail Watts; Patricia Alderman; Sergeant Matthew Bennett; Sergeant Loretta Carr; Officer Wanda Carter; Officer Kimberly Green; Sonia Idaewor; Sergeant Stormie Johnson; Lieutenant Kevin Murphy; Stephen Verch; and Lieutenant Dene Williams-Hatcher (collectively, the "County Defendants"); Natalie Hieb and Towanda Malley (collectively, the "Medical Defendants");[1] an unidentified "Charge Nurse," and 21 individual "John Does." ECF 1. Best's 41-page Complaint, which is unverified, alleges unconstitutional conditions of confinement at BCDC, his improper classification, defendants' failure to protect, obstruction of access to court, violation of religious freedom, deliberate indifference to medical needs, and retaliation. *Id.* He seeks a declaratory judgment as well as punitive and compensatory damages and injunctive relief. *Id.* at 3.

The Medical Defendants have filed a "Motion To Dismiss Or In The Alternative Motion for Summary Judgment." ECF 34. It is supported by a memorandum (ECF 34-1) (collectively,

---

[1] The Clerk shall amend the docket to reflect the full and correct names of the County and Medical Defendants.

the "Medical Defendants' Motion") and an exhibit containing Best's medical records.  ECF 34-2.
The County Defendants have also filed a "Motion To Dismiss, Or In The Alternative, For
Summary Judgment."  ECF 39.  Their motion is supported by a memorandum of law (ECF 39-1)
(collectively, the "County Defendants' Motion") and numerous exhibits, including several
affidavits.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Best
that the failure to file a response in opposition to the defendants' motions could result in dismissal
of his Complaint.  ECF 37, ECF 41.  Best filed nothing further.

Defendants "Charge Nurse" and the 21 John Does were neither identified nor served with
the Complaint.  Therefore, the claims against them shall be dismissed, without prejudice.

As to the remaining defendants, the matter is now ripe for disposition.  Upon review of the
record, exhibits, and applicable law, the court deems a hearing unnecessary.  *See* Local Rule 105.6
(D. Md. 2018).  The Medical Defendants' Motion, construed as one for summary judgment, shall
be granted.  Best's claims against BCDC, Sgt. Johnson, and Sgt. Carr shall be dismissed.  As to
the remaining County Defendants, the County Defendants' Motion shall be construed as a motion
for summary judgment and shall be granted.

## I.     Factual Background

### A.  Best's Allegations

In his Complaint, Best raises eleven claims arising from separate incidents.  ECF 1 at 7-
41.[2]

---

[2] All citations reflect their electronic pagination.

First, Best alleges that while he was being processed for admission into BCDC, he saw another inmate who was "itching and scratching all over." *Id.* at 7. Best told BCDC officers that the inmate may have lice, crabs, or bed bugs, but the officers did not direct any inmates to shower with delousing shampoo. *Id.* at 7-8. Best was then taken to an overcrowded housing unit where he saw another inmate with crabs. *Id.* at 8. After five days, Best noticed that he had "bites" all over his body. *Id.* at 8-9. Best informed a BCDC officer, who stated that the bites "were either from bed bugs or lice." *Id.* at 9. Best placed a sick call for medical attention but received no treatment. *Id.* He was subsequently moved to a different housing unit, at which time he filed a grievance regarding BCDC's failure to decontaminate inmates and the medical staff's failure to provide treatment. *Id.* After being threatened with an infraction, Best withdrew the grievance. *Id.* at 9-10.

Second, Best alleges that Baltimore County and its employees have no regard for his safety and health because Officer Green and additional BCDC staff improperly classified him as a "Blood gang member" with no supporting evidence. *Id.* at 10. Best claims that as a result of the misclassification, he was attacked by a cellmate who identified as a "Crip." *Id.* Best chose not to report the incident because he did not want to be labeled an informant and because the attacker was soon released from BCDC. *Id.* at 10-11. Best states that a correctional officer explained there was no classification criteria used at BCDC and "they do what they want to do" because it is privately owned. *Id.* at 11.

Third, Best claims that he was incorrectly placed on "suicide watch" and given a safety blanket, no sheets, and no pillowcase. *Id.* at 12. When he reached his assigned housing unit, Best saw that the mattresses had black mold. *Id.* at 12-13. He was thus forced to sleep on a moldy mattress. *Id.* at 13.

Fourth, Best alleges that BCDC does not have an adequate law library, nor does it provide assistance, supplies, postage, copies, or notary services for legal work, especially for inmates who are represented by an attorney. *Id.* at 14, 18-19.  Best states that when he arrived at BCDC, correctional staff confiscated his envelopes and carbon copy paper, and he was unable to purchase stamps or obtain certified mail forms. *Id.* at 15-16.  BCDC staff indicated that they would send Best's outgoing time-sensitive legal mail, but it was returned to him with no explanation. *Id.* at 16-17.  As a result of the delay in mailing, Best's claims in that particular case "were dismissed for failure to comply with court mandates." *Id.* at 17.  Thus, he alleges a violation of his right to access to courts. *Id.* at 17-18.

Best's fifth claim asserts a violation of his right to religious freedom, practice, or worship. *Id.* at 20.  He states that upon his arrival at BCDC on May 29, 2019, he told the processing officer that he was Muslim and had been fasting for Ramadan. *Id.*  Best was informed that newly admitted inmates were "not allowed" to fast. *Id.*  On June 1, 2019, Best spoke to a different officer who told him to contact Defendant Alderman regarding religious diet services. *Id.* at 20-21.  Best did as instructed, and also contacted Defendant Idaewor, but his request was not addressed. *Id.*  Despite being told by Lt. Williams and Lt. Murphy that he would have an Eid feast, no such feast was provided. *Id.* at 22.  Best filed a grievance regarding this issue but did not receive a response. *Id.*

Best's sixth claim alleges deliberate indifference to his health and safety. *Id.* at 23.  Best states that on June 8, 2019, a correctional officer instructed him to move to the top bunk because his new cellmate had a pass for the bottom bunk. *Id.* at 23-24.  Best told the officer that he also had a medical order for the bottom bunk, but the officer stated that it was not documented in the computer system. *Id.* at 24.  Later that month, Best was awakened by another officer at 3 a.m. for

4

his diabetes finger stick. *Id.* at 25. Best claims that his top bunk did not have a ladder, just like all of the beds on the "old side" of BCDC, and instead had a 10-inch cinder block, which is not sufficient to be used as a step ladder. *Id.* As Best attempted to come down, while experiencing low blood sugar and numbness on his foot, he fell with his leg landing inside the toilet bowl and his head hitting the wall. *Id.* at 26. As he tried to break his fall, Best also injured his hand. *Id.* at 23, 26. He was taken to the medical unit and given an ice pack, but he was not allowed to take the ice pack back to his cell. *Id.* at 26-27. Best returned to the medical unit later that night and was given a splint, Tylenol for pain, and an order for x-rays. *Id.* at 27. Two days later, the x-ray revealed "damage" but no broken bones. *Id.* The medical provider confirmed that Best had a pass for the bottom bunk; however, correctional staff continued to assign him to a top bunk. *Id.* at 28.

In Best's seventh claim, he alleges that Baltimore County and its employees at BCDC violated his constitutional rights by not having his cell equipped with an intercom system for use during emergencies. *Id.* at 29. Due to his diabetes and high blood pressure, Best believes it is imperative for him to have access to an officer at all times. *Id.* He claims that the lack of an intercom has caused him extreme paranoia and mental anguish. *Id.* Best wrote letters regarding this issue to Defendants Watts and Verch but received no response. *Id.* at 30.

As an example of an emergency, Best states that on June 27, 2019, his mental health provider changed his medication from Zoloft to Lamictal, despite Best's recollection that he was allergic to Lamictal. *Id.* at 30-31. The medical provider indicated that Best would be monitored and given Benadryl in case of hives, joint or muscle pain, swelling, or trouble swallowing and breathing. *Id.* At approximately 2 p.m. on June 27, 2019, Best had numbness on his left hand, pain in his arm, hives all over, and swelling in his throat. *Id.* at 31. He was taken to the medical unit at 3 p.m. and waited until 6 p.m. but was never evaluated. *Id.* at 31-32. Best's symptoms

continued throughout the night.  *Id.* at 32-33.  At 6 a.m. the following day, he asked a correctional officer to call the medical unit and was told that Nurse Natalie instructed him to place a sick call. *Id.* at 33.  The area sergeant, Sgt. Bennett, also refused to talk to him.  *Id.*  Finally, a correctional officer noted the medical provider's instructions regarding Benadryl and Nurse Malley rushed to Best's cell.  *Id.* at 34.  Best was taken to the medical unit, where he was treated and monitored for five hours.  *Id.*  Best asserts that an intercom system would have allowed him to get help quicker. *See id.* at 30-34.

Eighth, Best claims that BCDC's employees and contractors have failed to properly adhere to his prescribed medical diet.  *Id.* at 35.  Although his food trays have been marked as "diet," their contents have not differed from those found on regular trays.  *Id.*  As a result, Best's weight and A1C levels have increased.  *Id.* at 36.  Moreover, Best avers that BCDC has failed to provide Halal meals for the Muslims in the correctional facility.  *Id.* at 37.

Best's ninth claim alleges that BCDC correctional officers have illegally installed a camera over one of the toilets in the medical ward.  *Id.* at 38.  When he asked a female officer why there was a camera in that location, "her response was 'we like to watch you guys jerk off, so stop complaining and beat off for me.'"  *Id.*  Best filed a complaint pursuant to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309 (2018), which was still being investigated at the time he initiated suit.  *Id.* at 38-39.  He claims that after he filed the PREA complaint, his property was constantly lost or destroyed in retaliation.  *Id.* at 39.

Tenth, Best claims that he was falsely accused of assaulting another inmate and placed on segregation.  *Id.*  According to Best, the County Defendants violated his due process rights by failing to provide a copy of the incident report, the authorizing sergeant's signature, an explanation of Best's rights, the evidence against him, or his signature on any forms.  *Id.* at 39-40.  Best also

states that Hearing Officer Carter refused to call any of his requested witnesses. *Id.* at 40. After the hearing, Best was found not guilty, yet he remained in segregation for two more days. *Id.* at 40-41.

Last, Best claims that on August 1, 2019, he was denied participation in a drug treatment program. *Id.* at 41. When Best asked for an explanation, he was told that "high class/max" status inmates were ineligible for the program. *Id.* After arguing that he should not be classified as max until he is proven guilty in his criminal trial, he was told to file an administrative grievance. *Id.*

## B. Medical Defendants' Response

The Medical Defendants note that Best's sole allegation against them relates to the medical care provided after Best had an allergic reaction to Lamictal, a medication for bipolar disorder, on or about June 27, 2019. Medical Defendants' Motion, ECF 34-1 at 2.

Best's medical records reflect that he arrived at BCDC on May 29, 2019. ECF 34-2 (medical records) at 3. At intake and upon receipt of records from Best's previous incarceration in New York, a shellfish allergy was noted. *Id.* at 20. No other allergies were known or in his chart at that time. *Id.*

On June 3, 2019, Best completed a mental health intake history. *Id.* at 12-13. He stated that he took psychotropic medications and had a history of bipolar disorder, schizoaffective disorder, and depression. *Id.* On June 19, 2019, Best had his initial psychiatric evaluation with Psych Nurse Practitioner Lindsay Abbott. *Id.* at 10-11. At that appointment, Best discussed his prior medication and some of his underlying mental health conditions. *Id.* As to allergies, it was noted: "There are no known drug allergies. There is a reported allergy to shellfish." *Id.* at 12.

Best returned for a mental health visit on June 26, 2019. Abbott noted, *id.* at 10:

There are a number of failed medication[] trials. Most concerned about weight and management of diabetes at this time. Mood is no longer expansive, speech no

longer loud with taper off of Zoloft.  Will add Lamictal with Benadryl [prescription] as ordered for mood stabilization.  Patient is unsure of previous response to Lamictal.

The prescriptions for Lamictal and Benadryl were added to Best's chart.  *Id.* at 4.  On June 27, 2019, at 12:02 a.m., Best received his first dose of Benadryl.  *Id.* at 23.  Then, on June 27, 2019 at 3:25 p.m., Best received his first dose of Lamictal as well as another dose of Benadryl.  *Id.*  He received another dose of Benadryl at 12:04 a.m. on June 28, 2019.  *Id.*

On June 28, 2019, Nurse Malley noted that Best was seen at his housing unit at 7:08 a.m. for complaints of an allergic reaction since the day prior.  *Id.* at 2, 5-6, 17, 25-26.  He complained of a swollen right hand, itchiness, and feelings of his throat closing; he was brought to the medical unit for evaluation.  *Id.*

Upon physical assessment, Best had no hives, some itchiness, and a clear throat.  *Id.*  He was given a dose of Vistaril for the allergic reaction, his prescription for Lamictal was discontinued, and an allergy to Lamictal was added to his chart.  *Id.* at 2, 22, 26.  At 12:22 p.m. on June 28, 2019, the medical team sought to provide Best with an additional dose of Benadryl, but he did not respond for medication.  *Id.* at 24.  He received another dose of Benadryl at 8:55 p.m., and the medical providers continued to monitor his status.  *Id.* at 24, 26.  On June 29, 2019, Best was examined twice and was noted to be alert, in no distress, and with no signs of rash or hives.  *Id.* at 26.  At the end of that day, he was cleared from the medical unit.  *Id.* at 7.

### C.  County Defendants' Response

The BCDC "Inmate Handbook & Rules" (ECF 39-13) provides that all "inmates will be medically screened by a Qualified Health Care Professional upon admission" into BCDC.  *Id.* at 9.  In addition, BCDC suicide prevention protocols require that all inmates admitted to BCDC are issued only a suicide safety blanket and no sheets or pillowcase during their first 96 hours of

incarceration.  ECF 39-26 (Watts Aff.) at 3, ¶ 17.  All items, including mattresses, are cleaned when issued and it is the responsibility of each inmate to clean BCDC issued items for daily use. *Id.*  During the initial intake interview, inmates are also provided forms for legal assistance by classification officers.  ECF 39-13 at 31.  Newly admitted inmates are temporarily housed in Housing Unit 2G, and many are transferred in and out on a daily basis, leading to fluctuations in the population for that unit.  ECF 39-26 at 9, ¶ 29.

During Best's intake into BCDC, he gave Classification Officer Kimberly Green a New York City Police Department Omniform System Arrests document.  ECF 39-4 (NYPD Document). In a section titled "Gang/Crew Affiliation," the form said "Yes" with the name "Blood."  *Id.* at 2. Thus, Green entered a security alert into the Jail Management System, noting Best's affiliation with the Blood gang, despite Best saying that he was not part of a gang.  ECF 39-22 (Green Aff.) at 2-3, ¶¶ 10, 14, 15.

Moreover, at the time Best was processed into BCDC, he stated that he had no religious affiliation.  ECF 39-18 (Personal Information for Best).  On April 26, 2019, Defendant Alderman, the Human Services Program Manager at BCDC, sent an email to BCDC staff with an attachment stating that any inmate wishing to participate in Ramadan fast "must submit an Inmate Request Form #118 to the Dietary Department."  ECF 39-16 (email); *see also* ECF 39-15 (Job Description). The only Inmate Form #118 on file with the BCDC Dietary Department for Best is a request for a vegetarian diet dated June 18, 2019.  ECF 39-17 (Inmate Request).  According to Lt. Murphy, Best could not have spoken to him about an "Eid Feast" on June 10, 2019, because he was not scheduled to work that day.  ECF 39-24 (Murphy Aff.) at 2, ¶ 6.  And, although Lt. Williams spoke to Best on a regular basis, they never spoke about a religious feast.  ECF 39-27 (Williams Aff.) at 2, ¶¶ 6, 7).  With regard to Best's request for a medical diet, the Inmate Handbook & Rules provides that

"Special Diets for medical reasons may only be ordered by a Qualified Health Care Professional." ECF 39-13 at 17.

As to Best's claims regarding the lack of legal services at BCDC, the Inmate Handbook & Rules states that inmates may access legal materials during normal library hours and may request specific legal materials using Request Form #415.  ECF 39-13 at 30.  Upon request, the BCDC librarian then forwards specific case reference information to inmates, via facility mail.  *Id.* According to Defendant Gail Watts, the Director of BCDC, there are notary services available at BCDC and Best "has never been denied access to a notary."  ECF 39-26 (Watts Aff.) at 8, ¶ 26.

With regard to the housing unit cells referenced by Best in the Complaint, Watts acknowledges that the cells "were not designed with ladders.'"  *Id.* at 4, ¶ 19.  But, she avers that "the bunk beds have a concrete block to allow an inmate to step-up onto the top bunk."  *Id.*[3]  In those housing units, there is also an intercom system installed "inside each housing unit's dayroom under the pod control window as a listening device for the purpose of alerting staff to emergencies."  *Id.* at 5, ¶ 21.

As to Best's claim regarding illegal cameras in the medical unit bathroom, BCDC Director Watts notes that security cameras are used to monitor inmate and correction staff activity for the safety and security of inmates and corrections staff.  *Id.* at 8, ¶ 28.  According to Watts, inmates housed in the medical units suffer from minor to severe medical issues and must be monitored for medical emergencies.  *Id.*  Any misuse of security cameras is investigated by correctional supervisors and the Baltimore County Police Department.  *Id.*  The Baltimore County Police Department Internal Affairs Division investigated Best's allegation of misconduct and closed the investigation as not sustained.  ECF 39-11 (Investigation Report) at 6.

---

[3] Obviously, the same block would assist an inmate in getting down from the top bunk.

## II.     Standards of Review

### A.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable*

*Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view

such pro se complaints does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).  "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

### B.

The Medical and County Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015.  To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).   A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"   *Harrods*, 302 F.3d at 244 (citations omitted).   But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.   And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

15

56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 Fed. App'x at 638.

Best has not filed an affidavit under Rule 56(d).  Indeed, he has not responded to defendants' motions.  Moreover, I am satisfied that it is appropriate to address the pending motions as ones for summary judgment, as this will facilitate resolution of the case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir.

2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of

the factfinder to resolve factual disputes, including matters of witness credibility. That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because Best is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.    Discussion

As noted, the Medical Defendants seek dismissal or, in the alternative, summary judgment in their favor.  They argue, in pertinent part, that Best fails to demonstrate deliberate indifference to a serious medical condition.  ECF 34-1.

In their Motion, the County Defendants contend that: (1) Best fails to state Eighth or Fourteenth Amendment violations; (2) Best was not subjected to deliberate indifference to a serious medical need; (3) Best fails to state a due process claim; (4) the conditions of confinement at BCDC did not violate the Eighth Amendment's prohibition against cruel and unusual punishment; (5) reasonable measures were taken to ensure Best's safety; (6) Best fails to state a claim under § 1983 for violation of his religious rights; (7) BCDC provides adequate legal services; (8) Best was properly denied admittance to a drug program; (9) Best has not alleged personal participation on the part of Defendants Carr and Johnson; (10) Baltimore County cannot be held liable under the doctrine of respondeat superior; (11) BCDC is not a legal entity subject to suit; and (12) the County Defendants are entitled to qualified immunity.  ECF 39-1.

### A.    Medical Defendants

At the time of the incident giving rise to this case, Best was a pretrial detainee in Baltimore County.  Accordingly, his claims are analyzed under the Fourteenth Amendment.  *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  Indeed, "[d]ue process rights of a pretrial detainee are at least as great as the eighth amendment protections available to a convicted prisoner."  *Hill*, 979 F.2d at 991.

19

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338-39 (4th Cir. 2021).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson*, 501 U.S. at 297). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the

safety of . . . inmates." *Whitley*, 475 U.S. at 319-20; *see Farmer*, 511 U.S. at 832; *Raynor*, 817 F.3d at 127.  "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety."  *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Of relevance here, in order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008).  The Fourth Circuit has characterized the applicable standard as an "exacting" one.  *Lightsey*, 775 F.3d at 178. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available.  *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).  Proof of an objectively serious medical condition, however, does not end the inquiry.  As the Court explained in *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017), "The plaintiff must show that he had serious medical needs, which is

an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry."

In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Similarly, the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Put another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th

Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."). Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106).  Further, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury.  Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'"  *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving

a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.

But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct. 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's

24

known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Best claims that the Medical Defendants were deliberately indifferent to his serious medical needs while he was having an allergic reaction to Lamictal. In support of his claims, Best states only that a correctional officer told him that Nurse Hieb said he should place a sick call, and that Nurse Malley did not respond to his cell until the following day. There is nothing in the record, however, to show that a correctional officer contacted Nurse Hieb or that she was aware of Best's condition. As for Nurse Malley, Best's medical records reflect that Nurse Malley provided treatment for the allergic reaction as soon as she learned about Best's condition.

On this record, Best fails to demonstrate that the actions of the Medical Defendants or their failure to act amounted to deliberate indifference to a serious medical need. Therefore, the Medical Defendants' Motion, construed as a motion for summary judgment, shall be granted.[4]

---

[4] To the extent that Best's Complaint raises state law claims of medical malpractice and negligence, the court declines to exercise supplemental jurisdiction and thus will dismiss such claims, without prejudice. *See* 28 U.S.C. § 1367(c)(3).

**B.     County Defendants**

*1.  Section 1983*

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).  A person acts under color of state law "only when exercising power 'possessed

by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

### 2. BCDC, Sgt. Johnson, and Sgt. Carr

As a preliminary matter, BCDC is not a "person" subject to suit under 42 U.S.C. § 1983. Section 1983 states: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." (Emphasis supplied).

A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit").

Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. Clearly, BCDC is not a person within the meaning of the statute.  Therefore, Best's claims against it must be dismissed.  *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights).  Other than naming Sgt. Johnson and Sgt. Carr in the caption of the Complaint, Best does not attribute any specific action or inaction on their part that resulted in a constitutional violation.  Thus, Best fails to state a claim against either defendant.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation).

The suit shall be dismissed as to Johnson and Carr, without prejudice.

### *3.  Best's Claims*

a.  <u>Conditions of Confinement and Failure to Protect</u>

As previously stated, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII.  Best's first, third, and seventh causes of action, relating to the County Defendants' failure to decontaminate new inmates, crowded housing conditions, Best's placement on suicide watch, his receipt of a moldy mattress, and the lack of intercom systems in cells, raise conditions claims.  His second claim, asserting that he was improperly and arbitrarily classified as a "Blood

gang member," causing him to be attacked, raises an allegation that the County Defendants failed to protect him at BCDC.

Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* In order to establish the imposition of cruel and unusual punishment in conditions of confinement, a prisoner must prove two elements: that "the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). Similarly, to establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi*, 789 F.3d at 133 (quoting *Farmer,* 511 U.S. at 834).

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta*, 330 F.3d at 634. Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 302-03 (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson*, 878 F.3d at 107. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted).

Best claims that he was housed in a crowded unit with inmates who had lice, crabs, and bed bugs, was forced to sleep on a moldy mattress with no bedding, and was incorrectly classified as a gang member. Even if Best satisfies the objective prong – that he was deprived of a basic human need and the deprivation was sufficiently serious—he fails to show that, subjectively, the County Defendants acted with a sufficiently culpable state of mind in imposing such conditions as punishment.

As Defendant Watts explained, BCDC suicide prevention protocols require that all inmates admitted to BCDC are issued only a suicide safety blanket and no sheets or pillowcase during their first 96 hours of incarceration. Moreover, newly admitted inmates are temporarily housed in a particular unit, leading to fluctuation in the population as inmates are transferred in and out to their assigned cells. With regard to decontamination of those inmates, Watts notes that delousing shampoo is considered medication. As such, its usage is governed by medical diagnosis and not correctional officers. ECF 39-26 at 3, ¶ 15. And, with regard to Best's classification as a gang

member, his intake records reveal that the New York City Police Department previously indicated that he was a member of the Blood gang.  ECF 39-4 at 1.  As to Best's claim regarding the lack of intercoms, Director Watts explains that intercoms installed inside each unit's dayroom under the pod control window as a listening device for the purpose of alerting staff to emergencies.  ECF 39-26 at 51 ¶ 21.

Best also cannot withstand summary judgment because he has failed to produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. Rather, the record reflects that he was seen in the BCDC medical unit for his complaint of bed bug bites on June 14, 2019, at which time Best stated that they had resolved.  Medical Records, ECF 39-9 at 2.  During that visit, the provider noted that no other inmates reported beg bugs.  *Id.* Likewise, Best has neither alleged nor shown that he suffered any medical or mental issues as a result of sleeping on a moldy mattress.  Although he alleges that he was attacked by a cellmate as a result of being classified as a gang member, Best has not presented any evidence to support his allegation.

Last, Best experienced a medical emergency due to an allergic reaction.  But, he was promptly treated by medical staff, despite the lack of an intercom system in his specific cell.

Accordingly, viewing the facts as pleaded most favorably to Best, summary judgment is granted in favor of the County Defendants on these claims.

b.  Due Process

Best's fourth claim, asserting that the County Defendants have failed to provide adequate legal assistance, supplies, and services, is construed as an alleged violation of due process rights under the Fourteenth Amendment.  Such a claim fails because a critical requirement of an access-to-courts claim is that a prisoner must show "actual injury" to "the capability of bringing

contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Lewis*, 518 U.S. at 352-53 & n.3. The complaint must contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Here, Best has not provided a description of the claim that he alleges was dismissed by another court due to his late filing. Therefore, he has not satisfied the "actual injury" requirement and his access to courts claim fails.

To the extent Best alleges, as his tenth cause of action, that he was denied due process as a result of the correctional staff's failure to provide a copy of the incident report charging him with assault and the Hearing Officer's subsequent failure to call his witnesses, his claims also fail. Even if the County Defendants failed to follow prison directives or regulations regarding this issue, the failure does not, in and of itself, establish a violation of due process. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015).

Where a state has created internal prison procedures, the procedural protections of the Due Process Clause apply only to actions that implicate a protected liberty interest, such as those that result in the loss of good time credits, *see Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993), or otherwise lengthen the amount of time an inmate must serve, *see Montanye v. Haymes*, 427 U.S. 236, 242 (1976), as well as those that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 477-78, 483-84 (1995). Here, Best states that, following the hearing, he was found not guilty of the charges and

subsequently released from segregation.  Thus, Best fails to show a due process violation, and the court will grant summary judgment in favor of the County Defendants on this claim.

     c.  <u>Religion</u>

Best claims that the County Defendants violated his right to religious freedom, practice, or worship because they did not accommodate his dietary needs for Ramadan and Eid, and failed to provide Halal foods.  To be sure, inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)).  Therefore, prisoners must be afforded "reasonable" opportunities to practice their religion.  *Cruz*, 405 U.S. at 322.  This includes the "right to a diet consistent with [the inmate's] . . . religious scruples."  *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003).  A prison official violates this right if he intentionally, and without adequate justification, denies an inmate a diet that is religiously mandated.  *Lovelace v. Lee*, 472 F.3d 124, 199 (4th Cir. 2006).

However, only intentional conduct is actionable under the Free Exercise Clause of the First Amendment.  *Lovelace*, 472 F.3d at 201.  The Fourth Circuit has held that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.*  Therefore, a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."  *Id.*  Similarly, an official's negligent act does not implicate the Due Process Clause.  *Id.*

Best has failed to assert a conscious or intentional interference with his right to practice his religion because he did not inform BCDC staff that he was Muslim.  During intake, Best indicated that he had no religious affiliation.  ECF 39-18.  Although he alleges that he spoke to Lt. Murphy

and Lt. Williams about an Eid feast, Best's bald assertions are contradicted by Lt. Murphy's sworn statement that he was not scheduled to work on the day referenced by Best, ECF 39-24 at 2, ¶ 6, and Lt. Williams's sworn declaration that he never spoke to Best about a religious feast, ECF 39-27 at 2, ¶ 7. Thus, the County Defendants are entitled to summary judgment on this claim.

    d.  <u>Deliberate Indifference</u>

Best's sixth and eighth claims allege deliberate indifference to his health and safety based on the County Defendants' failure to assign him to a bottom bunk where the bunk beds lacked ladders, and their failure to adhere to his medical diet. Best also claims that the County Defendants were deliberately indifferent in denying him participation in a drug program. As explained above, the deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

As to Best's claim regarding his bunk assignment, there was no record in BCDC's jail management system to indicate that Best had a medical order for the bottom bunk. *See* Classification Files, ECF 39-19 at 2. It was not until June 10, 2019, after he fell, that a bottom bunk pass was added to his record. *Id.*

Likewise, nothing in the record shows that Best had a medical order for a special diet. Diets for medical reasons may only be ordered by a Qualified Health Care Professional. *See* ECF 39-12 at 17. As previously noted, the only diet specified in Best's record related to his request for vegetarian meals.

In light of the foregoing, Best has not established that the County Defendants knew of a risk to his health or safety when they initially assigned him to a top bunk or when they did not provide him with a special medical diet.

With regard to Best's allegation that his constitutional rights were violated when the County Defendants refused his participation in a drug treatment program, he fares no better. According to the County Defendants, only inmates who have been sentenced are allowed to participate in the Residential Substance Abuse Treatment program. ECF 39-1 at 38-39. Because Best was a pre-trial detainee, he was not eligible. Accordingly, Best has not established deliberate indifference on the part of the County Defendants, and they are entitled to summary judgment on this claim.

e.   <u>Sexual Assault & Retaliation</u>

Best alleges that the County Defendants illegally installed a camera over one of the toilets in the medical ward for the purpose of watching inmates perform sexual acts. Further, Best claims that after he reported this incident pursuant to PREA, the County Defendants retaliated by destroying his property.

The record reflects that security cameras are placed in the medical units to allow corrections staff to quickly respond to security and medical emergencies. ECF 39-26 at 8, ¶ 28. Any misuse of the cameras is investigated by correctional supervisors and the police. *Id.* Following the filing of Best's PREA complaint, the police investigated Best's allegation of misconduct and found it to be unsubstantiated. ECF 11 at 6.

In any event, with regard to Best's allegation that a female officer stated that the cameras were present so that they could watch inmates "jerk off," he fails to state a constitutional claim. Verbal abuse of inmates by guards, without more, does not establish an Eighth Amendment

violation. *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). Specifically, "[a]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.'" *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016) (per curiam) (quoting *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)).

To the extent Best avers that the County Defendants retaliated against him, he must establish three elements: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, *i.e.*, his protected conduct motivated at least in part the adverse action. *See Thaddeus-X. v. Blatter*,175 F.3d 378, 394 (6th Cir. 1999). Although retaliation is not expressly referred to in the Constitution, it is nonetheless actionable because such conduct tends to chill an individual's exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (recognizing that government may not deny a benefit on a basis that infringes a constitutionally protected interest). If there is no impairment of a plaintiff's rights, however, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *Id.* at 599 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)).

To state a prima facie claim of retaliation, Best has the burden of setting forth facts that would show that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind defendants' allegedly improper conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). In the prison context, the plaintiff must establish that the prison authorities' retaliatory action did not advance the institution's legitimate goals of

preserving internal order and discipline, or that it was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (citations omitted).   The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution.  *Id*. at 532. Claims of retaliation in the prison context are treated with skepticism "because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

If the plaintiff makes a prima facie showing, the burden shifts to defendants to demonstrate that they would have reached the same decision, even in the absence of constitutionally protected conduct.  *Id.*  Additionally, the plaintiff must demonstrate that the protected activity was the "but for" cause of the adverse action alleged.  *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006) (employment discrimination).  Causation can be inferred when the adverse action occurs close in time to the plaintiff's protected activity.  *See Foster v. Univ. of Maryland E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015).  Defendants can, however, offer legitimate and permissible reasons for their action to refute the plaintiff's evidence.  *See Guessous*, 828 F.3d at 217.

Taking the evidence in the light most favorable to Best, he has not established retaliation on the part of the County Defendants.  First, he has failed to set forth facts regarding the property that was allegedly lost or destroyed.  Second, he has not shown a connection between the filing of the PREA complaint and the missing property.  Thus, Best fails to establish impermissible retaliation, and the County Defendants are entitled to summary judgment.

#### 4.   *Respondeat Superior*

As to defendant Baltimore County, Best does not attribute any specific action or inaction on its part that resulted in a constitutional violation. *Trulock*, 275 F.3d at 402 (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation). To the extent Best intends to sue Baltimore County in its capacity as the County Defendants' employer, he cannot succeed.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Best has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Baltimore County's employees.  As discussed above, Best failed to show that his constitutional rights were violated.  Accordingly, he has necessarily failed to demonstrate that Baltimore County authorized or was indifferent to any such violation.  Best's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability.  *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse.").  Therefore, Baltimore County is entitled to summary judgment.

### IV.    Conclusion

Best's claims against BCDC, Sgt. Johnson, and Sgt. Carr shall be dismissed, and his claims against "Charge Nurse" and the 21 John Does shall be dismissed, all without prejudice.  As to the remaining claims, there are no genuine disputes of material fact and the remaining defendants are entitled to summary judgment as a matter of law.[5]

A separate Order follows.


March 9, 2021                                          /s/
Date                                          Ellen L. Hollander
                                              United States District Judge

---

[5] In light of the court's ruling, an analysis of defendants' remaining arguments is not necessary.